```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JANET A. BUCKLEY,
                          Plaintiff,             03-CV-6147

v.                                               DECISION
                                                 And ORDER
JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____
```

## INTRODUCTION

Plaintiff, Janet A. Buckley ("plaintiff" or "Buckley") filed this action seeking review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. § 1382, 1382c(a), and Disability Insurance Benefits ("DIB") under Title II of the SSA, 42 U.S.C. § 416(I), 423(d) for the payment period from March 1986 through February 1990. Jurisdiction to review the Commissioner's decision arises under 42 U.S.C. § 405(g). On September 15, 2003 Buckley moved for judgment on the pleadings. On September 10, 2003, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Commissioner moved for judgment on the pleadings, affirming that the plaintiff's onset date of disability was March 19, 1990.

For the reasons stated below this Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly the Commissioner's motion for judgment on the pleadings is therefore granted.

PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI benefits on November 18, 1982 alleging disability since January 15, 1980. (Tr. 17, 71-74.)[1] On December 31, 1982 the plaintiff's application for DIB was denied. (Tr. 75-9).  On January 17, 1983 the plaintiff's application for SSI was denied.  (Tr.82-5).  Buckley did not seek administrative review of these denials. The plaintiff filed another SSI application in March 1990.[2]  (Tr. 15).  This application was denied initially and after reconsideration.  On June 17, 1991 the Administrative Law Judge ("ALJ") determined that the plaintiff is unable to perform substantial gainful activity as a result of a combination of her impairments and therefore is disabled. (Tr. 67).  The plaintiff is currently receiving SSI and DIB benefits, backdated to the March 19, 1990 filing date. Id.  On March 8, 1993, the Commissioner sent plaintiff a notice pursuant to Stieberger v. Sullivan, 792 F. Supp. 1376 (S.D.N.Y. 1992), *modified* 801 F. Supp. 1079 (S.D.N.Y. 1992), *rev'd* 134 F.3d 37 (2d Cir. 1997), informing her that she was a member of the Stieberger class

---

[1]The Record contains plaintiff's disability insurance benefit claim (pursuant to Title II of the Social Security Act). The Record also contains a denial of her claim for supplemental security income benefits (Tr. 82-85) under Title XVI, but no separate application for those benefits.

[2]This information comes from the decision of the Administrative Law Judge ("ALJ") and in that document, the ALJ does not mention an exact filing date.

litigation and could seek a redetermination of her November 18, 1982, application for benefits. (Tr. 86, 92-3, 95-6.). Plaintiff applied for a redetermination, and after review, the Commissioner determined, on January 15, 1999, that the prior decision denying her 1982 application for SSI and DIB benefits was proper and in accordance with the law.  (Tr. 97-99, 101-02.).  Plaintiff then requested a hearing before an ALJ, and a hearing was held on June 14, 2000.  (Tr. 33-61.).  Following the hearing, the ALJ issued a written decision on August 10, 2000, in which he determined that for the period from March 1986[3] until March 1990, the plaintiff was not disabled. (Tr. 23.).  The Appeals Council denied plaintiff's request for review on February 3, 2003.   (Tr. 5-7.) Thus, the ALJ's decision became the Commissioner's final decision.

NON-MEDICAL EVIDENCE AND TESTIMONY

Plaintiff was born on May 13, 1948, and has a high school education. (Tr. 15, 17, 37).  The ALJ determined that she has no vocationally relevant past work experience, and the plaintiff testified that she has not worked since she quit her job as a secretary in 1968.  (Tr. 15, 17, 38).   Buckley alleges she became disabled on January 15, 1980, due to a combination of physical and

---

[3]Although plaintiff's application alleged a disability beginning in January 1980, the ALJ's decision refers only to the period from March 1986 through March 1990, per the limitation in the Stieberger settlement.  (Tr. 16).

mental impairments.  The plaintiff was insured for disability benefits only through September 30, 1980.  Id.

Buckley testified that in the 1980's her doctors prescribed her 30-40 mg of Valium a day.  (Tr. 38).  The plaintiff testified that in 1980 her ankle was causing her a lot of pain.  (Tr. 39). Buckley stated that she had arthritis in all her joints since 1973 that caused pain and swelling in her hips, elbows, knees and ankles.  (Tr. 48).  To relieve swelling and pain the plaintiff claims that she took 21 aspirins a day.  (Tr. 53).  The plaintiff testified that she took two Ambien a day to help her sleep and used Methobromate, Motrin, Celebrex, Flexeril, and Graphamere for her nerves.  (Tr. 43). Plaintiff was prescribed Valium, which she said made her feel hyper and "distracted." (R. 48.) Valium, she said, also made her hands tremble.  (Tr. 56.).  She said that this symptom of trembling hands persisted during her first administrative hearing in 1991 through to the time of the June 2000 hearing. (Tr. 60).  Due to her limitations the plaintiff testified that she has had a five pound restriction on lifting and that sitting and standing for long periods of time hurt her legs.  (Tr. 46-7). During the disputed time period the plaintiff claims she slept only two hours a night. Id.  Buckley testified that she had mental health counseling for five or six weeks at St. James Hospital. (Tr. 41).  A typical day for the plaintiff during the disputed time period would consist of waking up her son to go to school, washing

4

the dishes, eating lunch, and then sitting in the sun or watching soap operas. (Tr. 47). In 1973 Buckley claims she lost the use of her legs for three and a half months, which was diagnosed by Dr. Sayer as idiopathic edema. (Tr. 49). The plaintiff began to use a cane intermittently in 1980 and had to sleep with a neck brace from 1980-1991. (Tr. 50).

## MEDICAL EVIDENCE

The period under review was from March 1986 (the beginning of the period available for review under the *Stieberger* settlement) through February 1990 (after which plaintiff had already been found disabled). However, the ALJ also stated that he considered evidence dating back to plaintiff's alleged onset date of January 15, 1980, to determine whether she was eligible for Social Security Disability. (Tr. 16-17). The plaintiff explained that Brent Penwarden,[4] M.D., her general practitioner, described her condition as "nervous depression," but she also indicated that he was not a psychiatrist. (Tr. 40.).

The disability report on January 1980 noted that the plaintiff cannot walk very long, and     was observed walking with a very noticeable limp. (Tr. 105, 112). On January 10, 1980, plaintiff was admitted to St. James Mercy Hospital after falling at home and injuring her right ankle. (Tr. 131). On January 14, 1980 A. Byron Collins, M.D., noted that the plaintiff had swelling and deformity

---

[4]Dr. Penwarden began treating plaintiff in the early 1970s.

of the right ankle. (Tr. 135). An x-ray of her right ankle revealed a trimalleolar[5] fracture. (Tr. 140). On January 11, 1980, she underwent open reduction of the fracture and screw fixation. (Tr. 136). On January 16, 1980 the plaintiff subsequently began a course of physical therapy and continued to state that she was in a great deal of pain in her right ankle. (Tr. 138). The physical therapist, whose name is illegibly written on the Physical Therapy Progress Report, noted that plaintiff tended "to fatigue easily" and could walk between thirty-five and forty feet. Id. Buckley's gait pattern continued to improve from a limit of 60 ft. to 120 ft. with intermittent rests, but she did fatigue easily. (Tr. 139).

Plaintiff continued to undergo physical therapy and was discharged on January 23, 1980. (Tr. 131, 139). She was prescribed Darvocet for pain and wore a cast. A Byron Collins, M.D., in a report dated January 14, 1980, stated that plaintiff's other medications included one for her thyroid and Valium for "nerves." (Tr. 134). Dr. Collins also noted that plaintiff was "grossly overweight." Id.

On February 28 and 29, 1980, Plaintiff underwent follow-up and removal of her cast. (Tr.. 143-44). By March 21, 1980, the attending examiner at St. James Mercy Hospital, whose signature is

---

[5]Relating to a malleolus, especially of the ankle. Malleolus is an expanded projection or process at the distal extremity of each bone of the leg. Merriam Webster's Medical Dictionary (1993) at 406.

6

illegible and whose name is not printed or typewritten on the examination report, found that plaintiff had "good mobility of ankle" and "minimal swelling," and that she could start weight bearing ambulation. (Tr. 145). In progress notes dated May 2, 1980 through August 10, 1988, Dr. Penwarden documented that he continued to prescribe Valium to plaintiff. (Tr. 167-169).

In a General Medical Report, dated December 10, 1982, Dr. Penwarden diagnosed Plaintiff with obesity, and noted her history of hypothyroid and nervousness. (Tr. 146). For current symptoms, he listed "nervous," and under the section of the report entitled "Clinical findings," he wrote, "no disability noted." (Tr. 146). On the portion of the report where he was asked to "comment upon any other significant condition present," he wrote, "I am not aware that she is disabled." Id.

On December 14, 1982, plaintiff was seen by a State consultative examiner, Pol Akman, M.D. (Tr. 148). He noted that plaintiff used a cane, but stated that in his opinion, it was for security only, as she had no symptoms of callousities or endurations on her left hand palm, the hand with which she held her cane. (Tr. 149). He observed that plaintiff was grossly overweight, apprehensive, pleasant and cooperative. (Tr. 150). Akman found that she had traumatic arthritis of the right ankle and suffered from obesity and anxiety. (Tr. 152). Upon physical examination Akman noted that her right ankle was 30% restricted as compared to the left

ankle. (Tr. 150). Akman found lumbar lordosis present on examination of the plaintiff's back, but found no tenderness over her paraspinal musculature. (Tr. 151). Her motion in the joints in her shoulders, elbows, wrists and digits were all normal with no crepitation. (Tr. 152). The findings of Dr. Akman's examination was that the plaintiff suffered from traumatic arthritis or the right ankle and anxiety. Id. In a Residual Functional Capacity Evaluation completed on December 14, 1982, Dr. Akman determined that in an eight-hour work day, plaintiff could sit for eight hours, stand from four to six hours, and walk from two to four hours. (Tr. 153). He also determined that she could occasionally lift up to twenty pounds, carry up to twenty pounds, bend, squat, and crawl. In the section of the form asking about mental disorders, he wrote, "anxiety present." (Tr. 154). Dr. Akman noted that the plaintiff had functional limitation in her right ankle which led to 30% flexion and 30% extension in that ankle. Plaintiff also had anxiety with gross tremor on both hands upon stress. Id.

An x-ray taken of plaintiff's ankle on December 14, 1982, was reviewed by Mohammad Ayyub, M.D. He determined that the x-ray suggested the development of some arthritis in plaintiff's right ankle. (Tr. 155). On December 14, 1983, plaintiff injured her left knee. Upon examination by David Nash, M.D., the revealed some swelling and bruising and plaintiff stated that she has had a

thyroid problem since 1970. (Tr. 156). An x-ray of her left knee, read by E.M. Auringer, M.D., on December 14, 1983, showed "no fracture, dislocation or bone pathology of the left knee." (Tr. 157).

On August 6, 1986 the plaintiff met with R.L. Peterson, M.D., because she claims she felt pain with movement and breathing. (Tr. 159). Peterson prescribed 375 mg of Naprosyn for a left anterior chest strain. (Tr. 159). These treatment records also indicate that plaintiff continued to take 3 tablets a day of thyroid medication and 15 mg of Valium as well. (Tr. 156-59).

On June 24, 1987, plaintiff was seen by P. Shah, M.D., complaining of low back and leg pain. (Tr. 161). Dr. Shah's examination revealed tenderness, positive straight leg raising, and restricted range of motion. Dr. Shah's assessment was possible herniated disc and he prescribed 100 mg of Darvocet-N and 750 mg of Robaxin. Id. On March 29 and July 5, 1988, plaintiff reported having been physically abused by her boyfriend and was treated by Dr. Peterson for multiple contusions and a sprained left ring finger. (Tr. 162-4).

On September 29, 1989, Dr. Penwarden prescribed Ativan for the plaintiff's anxiety and Meprobamate to relieve her nervousness and tension. (Tr. 170). On January 23, 1990 registered nurse, Jean Parks, assessed that the plaintiff suffered from severe anxiety, hypothyroidism and low back syndrome. (Tr. 166).

9

LEGAL STANDARD

A.  Jurisdiction and Scope of Review

Jurisdiction to hear claims based on denial of Social Security benefits is granted to district courts through 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g) the Court must accept the findings of fact made by the Commissioner if such findings are supported by substantial evidence in the record. Substantial evidence consists of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.R., 305 U.S. 197, 229 (1938).

Under the substantial evidence standard the court's inquiry is "whether the record read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

B.  Legal Standards

Buckley contends that she is entitled to SSI and DIB benefits for the period from March 1986 through February 1990 as provided in Title II and XVI of the Social Security Act. In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. SSR 83-20 (Aug. 20, 1980).

To be entitled to DIB benefits a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible

for SSI benefits a claimant must meet the income and resource limitations of 42 U.S.C. §§ 1382a, 1382b. To receive benefits under either statute a claimant must demonstrate their inability to engage in a substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Under Stieberger "all New York residents whose claims for benefits or continuation of benefits have been or will be terminated since October 1, 1981 based on a determination that they do not have a disability that prevents them from engaging in substantial gainful activity and whose benefits have not been granted or restored through subsequent appeals" may have their case reopened because Administrative policy did not require decision makers to apply Second Circuit case law. Steiberger, 792 F.Supp. at 1376; (Tr. 16).

"An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job

vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B).

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not engaged in any substantial gainful activity, the Commissioner must determine whether the claimant has a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 of 12 months unless the impairment is likely to result in death. Third, if the claimant does suffer such an impairment, the Commissioner must determine the severity of the impairment and whether it meets or equals a listing in Appendix 1, Subpart , Regulation No. 4. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment(s) is not the equivalent of a condition on the list the fourth inquiry is whether the claimant is able to perform any past work. If the claimant is not able to perform any past work then the final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. <u>Bush v. Shalala</u>, 94 F.3d 40, 45 (2d Cir. 1996).

DISCUSSION

Plaintiff argues in her memorandum of law that, "despite the fact that the medical evidence that was before ALJ Chwalek[6] may have potentially supported a finding of disability for the period at issue in the case at bar, astonishingly, the ALJ's decision provided no indication that the ALJ undertook an independent review of this medical evidence." (Pl.'s Mem. of Law at 10). In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations and the medical and other evidence concerning impairment severity. SSR 83-20 (Aug. 20, 1980). Plaintiff argues that the ALJ was required to evaluate the evidence that was presented on her earlier, and successful claim, as well as any new evidence presented at the hearing, citing SSR 83-20 as authority. (Pl.'s Mem. of Law at 11.)

The Court rejects plaintiff's argument that the ALJ did not properly consider the medical evidence. His decision clearly states that he considered the medical evidence from January 1980 through February 1990 and found it unpersuasive. (Tr. 18). Dr. Collins' report from January 14, 1980, makes no indication of whether plaintiff was disabled. (Tr. 133-34). There is no evidence that the plaintiff's severe polyarthritis was disabling during the disputed time period. A January 23, 1980, physical therapy

---

[6]This is the ALJ who determined plaintiff's disability claim for the period from March 1990 to the present. (R. 64-67; see also Pl.'s Mem. of Law at 9.)

13

progress report following plaintiff's ankle fracture repair surgery showed she was able to walk with a walker approximately 60 feet and had improved to 120 feet. (Tr. 139). By March 21, 1980, the attending examiner at St. James Mercy Hospital found that plaintiff had "good mobility of ankle" and "minimal swelling," and that she could start weight bearing ambulation. (Tr. 145). According to Dr. Akman's examination the plaintiff's motion in the joints in her shoulders, elbows, wrists and digits were all normal with no crepitation. (Tr. 152).

There is little supporting evidence that during the disputed time period that the plaintiff suffered from a disabling generalized anxiety disorder. There are only noted instances of medications (Valium, Ativan, and Meprobamate) being prescribed for anxiety and nerves and the report by Dr. Akman that notes that there is anxiety present. (Tr. 154). Although registered nurse Jean Parks found "severe anxiety" this opinion is not granted much deference due to Parks being a nurse and that she only observed the plaintiff once. 20 C.F.R. § 404.1527(d)(1)(2); 20 C.F.R. § 404.1513; (Tr. 166). The plaintiff's treating physician Dr. Penwarden noted on December 10, 1982 that there was nervousness present but "no disability noted." and the he was " not aware that she is disabled." (Tr. 146). Under 20 C.F.R. § 404.1527(d) the opinions of the plaintiff's treating physician, although not controlling, are given considerable deference.

The ALJ determined that for this period, "the medical evidence is relatively insubstantial and does not tend to sustain the burden of proof which is on the claimant, so show and establish severe impairments leading to preclusion of useful work activities." (Tr. 18). Nevertheless, determining that there was "some evidence involving both right ankle fracture and anxiety disorder with depression," he decided that "in all fairness to the claimant it might be said … these two conditions existed during the period under review and may have involved some relatively persistent restrictions of work-related functioning." (Tr. 18). The medical evidence for the time period of January 1980 through February 1990 supports the ALJ's finding that the plaintiff was able to perform light and sedentary work during that time. 20 C.F.R. §§ 404.1567 and 416.967.

## CONCLUSION

For the reasons set forth above, I find that there is substantial evidence in the record to support the ALJ's conclusion that the plaintiff is not eligible for DIB or SSI for the period of March 1986 through February 1990. Accordingly, the Commissioner's motion for judgment on the pleadings is granted.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         August 21, 2006

15